# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 22, 2010

## STATE OF TENNESSEE v. KEITH A. WHITED

**Appeal from the Criminal Court for Fentress County**
**No. 9304     Shayne Sexton, Judge**

---

**No. M2010-00134-CCA-R3-CD - Filed November 19, 2010**

---

The Defendant, Keith A. Whited, was charged with first degree murder, driving under the influence (fourth offense), and driving on a revoked license. Following a jury trial, the Defendant was convicted of second degree murder, a Class A felony, driving under the influence (fourth offense), a Class E felony, and driving on a revoked license, a Class B misdemeanor. See Tenn. Code Ann. §§ 39-13-210(c); 55-10-403(a)(1), -50-504(a)(1). In this direct appeal, the Defendant contends that: (1) the verdict was against the weight of the evidence; (2) the testimony of the three eyewitnesses for the State was tainted and should have been disregarded; (3) the police investigation was mishandled and the crime scene was not protected; and (4) the lead investigator's testimony was inconsistent and should have been disregarded. After our review, we affirm the Defendant's convictions. We remand solely for the purpose of entry of a corrected judgment form for the second degree murder conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Harold E. Deaton, Jamestown, Tennessee, for the appellant, Keith A. Whited.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William Phillips, District Attorney General; and John W. Galloway, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

This appeal arises out of the June 30, 2007 shooting and subsequent death of Benny Conatser. On September 6, 2007, a Fentress County grand jury indicted the Defendant for first degree murder, driving under the influence (fourth offense), and driving on a revoked license. The Defendant's trial was held May 1-2, 2008.

Sarah Conatser testified that, on June 30, 2007, she went with her uncle, Russell Honeycutt, and his girlfriend, Evelyn Bennett, to the house that Katrina Honeycutt, her first cousin,[1] and the Defendant shared. She recalled that the Defendant had several guests over and that they were drinking alcohol. She alleged that, while she was there, the Defendant's father, Kirby Whited, lifted up the back of her skirt. She said that she told Evelyn Bennett and Katrina Honeycutt what happened and that Katrina Honeycutt told the Defendant. She testified that the Defendant started kicking a wall and then ordered her to leave. She also said that when she, Evelyn Bennett, and Russell Honeycutt were going to the car, the Defendant pulled out a gun. She recalled that the Defendant was prevented from using it when Katrina Honeycutt tackled him to the ground.

After the incident at the Defendant's house, Sarah Conatser went back to the home she shared with her parents, Sandra and Benny Conatser. She testified that Johnny and Heather Wright, Katrina Honeycutt's sister, along with their two children, were at the Conatser residence. However, she recalled that, when she got to the house, her parents were taking a nap. She said that she did not wake her parents up, but that she did tell Johnny and Heather Wright what happened at the Defendant's house. Sarah Conatser testified that she then went with Russell Honeycutt and Evelyn Bennett to her grandparents' house in Morgan County.

Sarah Conatser also said that the Defendant and her father, Benny Conatser, were good friends and that the Defendant went to the Conatser residence every day. She testified that she did not know of any problems between her father and the Defendant.

---

[1] Because most of the witnesses who testified at trial are related to each other, we will explain the pertinent relationships at the outset. The victim in this case is Benny Conatser. He was married to Sandra Conatser, and they had several children, including Sarah Conatser. Mary Copeland, Sandra Conatser's sister, is the mother of Katrina Honeycutt, the Defendant's girlfriend, and Heather Wright. Heather Wright is married to Johnny Wright, and Jonathan Wright is their son. For clarity, we will refer to the witnesses using their full names.

Sandra Conatser testified that, on the afternoon of June 30, 2007, when she awoke from a nap, Johnny and Heather Wright informed her that her daughter Sarah accused Kirby Whited of lifting up the back of her skirt. Sandra Conatser testified that her husband also heard this and was upset. She testified that, later that evening, the Defendant and Kirby Whited came to the house. She recalled that she, her husband, and Johnny Wright all went outside when they saw the Defendant's vehicle come to the house. Sandra Conatser stated that her husband and Kirby Whited were having "words" about Sarah Conatser's allegations that Kirby Whited lifted up her skirt. Sandra Conatser testified that they told Kirby Whited and the Defendant that they needed to leave and that both men turned and walked toward their vehicle. She described, "And [the Defendant] started to get in, and he just turned around, felt for his gun and come back and shot Benny." She recalled that the Defendant was about ten feet from her husband when he shot him. She testified that her husband did not have any kind of weapon, bat, or stick when he was shot. She testified that, besides cussing at Kirby Whited, her husband did not do anything to hurt the Defendant or his father. She said that her husband was flown to the University of Tennessee Medical Center in Knoxville, but he never regained consciousness and died five days later.

Sandra Conatser said that she knew the Defendant carried a gun with him most of the time and that her husband probably also knew that. She acknowledged that her husband had a temper and had previously shot someone who came to their house with a gun. She also said that she and her husband had been involved in several physical altercations with each other.

Johnny Wright testified that he was at the Conatser residence on June 30, 2007. He said that Sarah Conatser told him that Kirby Whited lifted her skirt up when she was at the Defendant's house. He also stated that he relayed the story to both Sandra and Benny Conatser. Johnny Wright testified that, later that evening, Kirby Whited and the Defendant came over to the Conatser residence. He recalled that Kirby Whited denied Sarah Conatser's allegations and that Benny Conatser was "cussing him, telling him, you know, he didn't appreciate him disrespecting Sarah like he was doing." The Conatsers then told the Defendant and Kirby Whited to leave. Johnny Wright testified that Kirby Whited got into the passenger side of the vehicle and that, when the Defendant got to the driver-side door, he stopped, turned around, pulled out his gun, walked a few steps toward Benny Conatser, and shot him. Johnny Wright recalled that the Defendant was approximately ten to twelve feet from Benny Conatser when he shot him. He testified that Benny Conatser did not have any kind of weapon, stick, or bat at the time of the shooting. He also said that no blows were exchanged between the men before the Defendant fired the shot.

On cross-examination, Johnny Wright said that he knew the Defendant carried a gun and was sure that Benny Conatser knew that as well because "[e]verybody around there knowed Keith had a gun." He also acknowledged that he had fights with the Defendant in

the past and had even been previously charged with assaulting the Defendant. He explained, "We'd fight and we'd be buddies the next day, man, that's just how it went." However, he did say that, most of the time, their fights occurred after they consumed alcohol. He said that the Defendant acts differently when he drinks a lot and explained, "He's a redneck when he's drunk, you know, likes to jump on people." Johnny Wright also stated that, when Officer Derek Richards took his statement, his wife, Heather Wright, and Sandra Conatser were in the same room and could hear what he was saying.

Heather Wright testified that she was also at the Conatser residence on June 30, 2007, when Kirby Whited and the Defendant came over. She said that she stayed inside the house and looked out the kitchen window, where she could see the Defendant pull out his gun and shoot it. From her vantage point, she could not see Benny Conatser. However, she stated that she did not recall seeing a baseball bat at the Conatser residence, nor did she see Benny Conatser bring anything outside with him when the Defendant and Kirby Whited arrived. Heather Wright also testified that the police did not separate her from her husband and Sandra Conatser when they took her statement.

Officer James Markwood, a police officer in the City of Jamestown, testified that he was on duty on June 30, 2007, and he received a call on the radio around 7:20 p.m. about the shooting. Office Markwood said that he knew who the Defendant was and, as he was heading toward the Conatser residence, he passed a vehicle that matched the description of the Defendant's car. Officer Markwood followed the vehicle and arrested the Defendant. He described, "He appeared to be extremely intoxicated. He had a strong odor of alcoholic beverage come from his person. He was very unsteady on his feet." He also testified that when he checked the Defendant's driver's license, he learned that it had been revoked. Officer Markwood testified that he searched the Defendant's vehicle but did not find a weapon. He stated that the Defendant told him that he threw the gun out on the side of the road. Officer Markwood also testified that he took the Defendant to the hospital so that they could take a blood sample from him and that he sent the sample to the crime lab for processing.

Detective Johnny Murphy stated that he worked for the Fentress County Sheriff's Department and helped investigate the shooting at the Conatser residence on June 30, 2007. He testified that, when he arrived, Officer Derek Richards handed him a .32 caliber automatic empty shell casing that was found in the driveway. He said that the next morning, after officers learned Mr. Conatser sustained an exit wound, they searched the crime scene and found a .32 caliber bullet in the driveway. He testified that officers never found the gun used to shoot Mr. Conatser, despite the fact that they searched the surrounding area with metal detectors. He also testified that officers looked for a baseball bat at the Conatser residence, both the night of the shooting and the next day, but they did not find one.

Investigator Murphy testified that, the morning after the shooting, Kirby Whited[2] gave him the following statement:

> [W]e were at Katrina Honeycutt's home having a cookout. Sarah Conatser told that I had pulled her dress up. Keith told her to leave. She left. Approximately two or three hours later, Keith said he was going to Benny Conatser's home, and I told him that I was going, too.
>
> I got out of the vehicle and got about halfway to the house when Benny came out and hit me . . . in the side of the head with a baseball bat. . . . It knocked me down and he started to do it again, and Keith shot him. We left and Keith took me home, and then . . . he left. After he left, I hid the gun in the woods.

Detective Murphy recalled that he touched and examined Kirby Whited's head but that he did not see any signs that he had been hit with a baseball bat.

Detective Murphy also stated that the Defendant gave him the following statement:

> [A]fter me and Dad—Kirby—left the cookout at Mike and . . . Katrina's house, we went to Dad's house and from there to Benny Conatser's to see what was going on. I had been drinking liquor and beer and taking pain pills that day.
>
> Benny came out of the house and hit Dad with a small baseball bat and hit Dad in the face. Dad didn't fall down . . . But, when we started to leave, Benny acted like he was going to hit him again, so I took the gun out of my pocket and shot [toward][3] Benny. The gun was a small .32 caliber auto. I had only one bullet in the gun. I carry the gun . . . all the time. After I shot, we got into the vehicle and left. After we left Benny's, I don't remember anything until I was getting cuffed.

---

[2] Kirby Whited was charged with concealing the gun used in the shooting. He and the Defendant were tried together.

[3] The transcript reflects that Detective Murphy said "shot Benny." However, on cross-examination, defense counsel pointed out that he left out the word "toward" and Detective Murphy replied that he did not mean to leave out the word. We also note that this statement was entered into evidence as an exhibit, however exhibits were not included in the appellate record and, thus, we cannot verify the Defendant's actual words.

Sheriff Chuck Cravens testified that he spoke with the Defendant shortly after he was arrested and described his conversation with the Defendant as follows:

> He told me that him and his father went to Benny's to talk to Benny about the situation with Sarah and that Benny came out, had a ball bat, and one thing led to another, and they got into . . . an argument and that Benny was hitting his father with a ball bat. And he had the gun in his pocket and said he only had one . . . round in the gun, that's all he'd ever carried in it, and he pulled the gun out and shot toward Benny and shot him.

Sheriff Cravens also testified that Kirby Whited alleged that Benny Conatser had assaulted him with a baseball bat prior to the shooting. Sheriff Cravens elaborated, "He kept rubbing his head, saying that he had knots . . . on his head. And I touched Mr. Whited's head, but I couldn't feel no knots . . . on his head." He also said that he did not see any blood on Kirby Whited's head.

Dr. Darinka Mileusnic-Polchan testified that she is an Associate Professor of Pathology at the University of Tennessee Medical Center in Knoxville and was also Acting Chief Medical Examiner for Knox County.[4] She stated, "Mr. Conatser died of the complication of a single through and through, a gunshot wound of the abdomen. And the complications included the blood loss which resulted in the damage to many internal organs, particularly the lungs." She said that the bullet entered Mr. Conatser's right abdomen and exited through his left abdomen.

Margaret Massengill testified that she works in the Toxicology Division at the Tennessee Bureau of Investigation (TBI) Crime Laboratory in Knoxville, and she was classified as an expert in the field of toxicology. She stated that she tested the Defendant's blood sample and that his blood alcohol content was 0.23, almost three times the legal limit. When asked how fast people eliminate alcohol from their system, Ms. Massengill said that the average person eliminates approximately 0.02 an hour, provided that they have stopped consuming alcohol. She acknowledged that it was possible that, because the Defendant's blood sample was taken approximately ninety minutes after he was arrested, his blood alcohol level at the time of arrest was 0.03 or 0.04 higher than 0.23.

Stephanie Dodson, a forensic toxicologist in the Blood Alcohol/Toxicology section of TBI's crime lab in Knoxville, was also deemed an expert in the field of toxicology. She testified that she tested the Defendant's blood for drugs and that his blood was positive for Dihydrocodone, Diazepam, and Nordiazepam.

---

[4] The parties stipulated that Dr. Mileusnic-Polchan was an expert in the field of forensic pathology.

The defense presented testimony from Jonathan Wright, Jr., the nine-year-old son of Johnny and Heather Wright, who was also present at the Conatser residence on the evening of the shooting. He testified that, when the Defendant and Kirby Whited came over to the house that night, Benny and Sandra Conatser, and his father, went outside. He stated that none of them had anything in their hands when they went outside.

Mary Copeland testified that she was the grandmother of Jonathan Wright and the mother of Katrina Honeycutt, the Defendant's girlfriend. She testified that Jonathan Wright, within a few days after the shooting, told her that Benny Conatser hit Kirby Whited with a ball bat before the Defendant shot him. She said that her grandson also told her the same version of events on another occasion.

The Defendant testified on his own behalf. He said that he had known Benny Conatser for about ten years and that he had even lived with the Conatsers for about two or three years. He testified that he and Benny Conatser had no problems with each other. He explained that he often carried a gun because "a lot of people like to jump onto [you] when you're drunk," and mentioned that he and Johnny Wright had fought in the past. The Defendant testified that his gun was a .32 caliber automatic and that he did not have a permit to carry it.

On the evening of June 30, 2007, the Defendant said that he was going over to Benny Conatser's house to drink and "[s]it around with Benny." He described the events leading up to the shooting as follows:

> Me and Dad got out, started to walk up to the porch there, and Benny started cussing Dad there, hit him in the head—side of the head with a ball bat or in the face, somewhere in the—you know, hit him in the head, and then they told us to leave so we turned around and started to leave, and Benny come like he was gonna hit him again so I pulled my gun and shot toward Benny. And I didn't know if I shot him or not.

On cross-examination, the Defendant admitted that he was drunk on the night of the shooting. He said that all day he had been drinking beer and liquor and that he had also taken pills. He acknowledged that he was driving a vehicle when he was stopped and arrested and that his driver's license had been previously revoked. When asked whether he had brandished his gun at the cookout after Sarah Conatser had accused his father of lifting her skirt, he said that he thought he "had to just to get [Sarah Conatser] to leave."

On May 2, 2008, the jury convicted the Defendant of second degree murder, driving under the influence, and driving while his license was revoked. On June 16, 2008, the trial

court sentenced the Defendant to twenty-three years at 100% for the second degree murder conviction, two years at 30% for the felony driving under the influence conviction, and six months for the driving with a revoked license conviction. He now appeals.[5]

## Analysis

In this appeal, the Defendant contends that: (1) the verdict was against the weight of the evidence;[6] (2) the testimony of the three eyewitnesses for the State was tainted and should have been disregarded; (3) the police investigation was mishandled and the crime scene was not protected; and (4) the lead investigator's testimony was inconsistent and should have been disregarded.

### I. Sufficiency of the Evidence

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions

---

[5] The State asserts that the Defendant's appeal should be dismissed because he failed to file a timely notice of appeal. However, on April 29, 2010, this Court issued an order finding that waiver of the timely filing of the notice of appeal was appropriate in this case.

[6] The Defendant does not specify if he is arguing that the evidence was not sufficient regarding all three of his convictions or only his second degree murder conviction. However, because the argument section of the Defendant's brief only addresses the shooting, we will consider the issue of sufficiency regarding the Defendant's other two convictions—driving under the influence and driving with a revoked license—waived. See Tenn. Ct. Crim. App. R. 10(b).

about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Second degree murder is "[a] knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b).

The jury heard much testimony regarding the circumstances of the shooting and the events leading up to it. Sarah Conatser testified that, when she was at the Defendant's cookout, the Defendant's father lifted up the back of her skirt. She recalled that, as she, Russell Honeycutt, and Evelyn Bennett were leaving, the Defendant brandished his gun. Moreover, the Defendant admitted that he took out his gun to get Sarah Conatser to leave his cookout after she made the allegations against his father. Testimony revealed that, when the Defendant and Kirby Whited arrived at the Conatser residence later, Benny Conatser confronted Kirby Whited about his daughter's allegations and that they had "words." From all accounts, during this volatile situation, the Defendant pulled out his gun and shot Benny Conatser. Moreover, the Defendant admitted that he took out his .32 caliber automatic weapon and "shot toward Benny." Although the Defendant claimed that he shot Benny Conatser in defense of his father, the jury clearly chose to accredit the testimony of Sandra Conatser and Johnny Wright, who both testified that the victim did not have a ball bat and was not engaged in a physical altercation with Kirby Whited before he was shot.[7] Further, Sandra Conatser and Johnny Wright testified that the Defendant had walked back to his vehicle, then turned around, took out his gun, walked toward Benny Conatser, and shot him. Finally, Dr. Mileusnic-Polchan testified that Benny Conatser died from complications of the gunshot wound. Thus, we conclude that the State presented sufficient evidence for a reasonable trier of fact to find, beyond a reasonable doubt, that the Defendant was guilty of second degree murder. This issue has no merit.

## II. Remaining Issues
First, the Defendant contends that, because the police took the statements of Johnny Wright, Heather Wright, and Sandra Conatser while they were all in the same room, "the

---

[7] We note that the trial court instructed the jury regarding self-defense and defense of a third person. See Tenn. Code Ann. § 39-11-611, -612. The trial court also instructed the jury that it could consider the Defendant's voluntary intoxication in its determination of whether he possessed the required culpable mental state. See Tenn. Code Ann. § 39-11-503.

testimony of the three eyewitnesses for the State was tainted and should have been disregarded." Second, the Defendant argues that the police investigation was mishandled and the crime scene was not protected. Third, the Defendant argues that Detective Murphy's testimony was inconsistent between the preliminary hearing and the trial.

The Defendant has waived these issues by failing to cite to any legal authority in his brief to support his claim for relief. See Tenn. Ct. Crim. App. R. 10(b) (providing that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references will be treated as waived in this court"); see also Tenn. R. App. P. 27(a)(7) (stating that briefs shall contain citations to the authorities relied on). The Defendant is not entitled to relief on these issues.

### III. Remand for Corrected Judgment

With regard to the judgment entered for the second degree murder conviction, we note that the judgment form does not indicate the sentencing range for the Defendant. The judgment form does reflect that the Defendant will serve his sentence as a violent offender at 100%. The transcript reflects that the trial court found the Defendant to be a standard offender, but the judgment does not so reflect. This case is remanded for the sole purpose of entry of a corrected judgment reflecting that the Defendant was sentenced as a Range I, standard offender.

### Conclusion

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court. We remand to the trial court solely for the entry of a corrected judgment form for second degree murder in accordance with this opinion.

_____
DAVID H. WELLES, JUDGE